*E R*

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| In The Matter of Petitioner, Nina Anand | CID No.: 2020-DT-341 |

*20 mc 23*

## PETITION BY NINA ANAND TO QUASH
## CIVIL INVESTIGATIVE DEMAND

Petitioner, Nina Anand, hereby submits the following petition to quash the Civil Investigative Demand by the United States Department of Justice and avers as follows:

1.     This matter arises as a result of a Civil Investigative Demand ("CID") served upon petitioner, Nina Anand, on January 29, 2020.  A copy of Nina Anand's affidavit is attached hereto as Exhibit "1" including the CID served upon her as sub-Exhibit "A" of Exhibit "1".

2.     The CID seeks extensive production of documents and oral testimony under the False Claims Act, 31 U.S.C. § 3729-3733, to determine whether there is or has been a violation of §3729 of the False Claims Act by Neil K. Anand, with and through his corporate entities, including the Institute of Advanced Medicine & Surgery; PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health, Care; EZ Pharmacy; Integrity Dispensing System; and with and through employees including Nina Anand and whether each knowingly presented or caused to be presented fraudulent claims for payment to Medicare and other federal healthcare programs.  See sub-Exhibit "A" of Exhibit "1".

3.    The CID definition of documents is broad and sweeping provides the following:

    1.    "You" or "your" shall mean Nina Anand, and any person acting on her behalf, including but not limited to employees, contractors, attorneys, consultants, accountants, investigators, representatives, or agents.

    2.    "Documentary material," "document," or "documents" shall mean all writings, recordings, papers, tangible things, or electronically produced or stored matter of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of all records, paper, communication, tabulation, chart, diaries, appointment books, calendars, schedules, journals, notes, memoranda, reports, minutes, notices, charts, graphs, tables, bulletins, financial statements, balance sheets, asset lists, ledgers, letters, correspondence of any kind, contracts, agreements, negotiable instruments, time records, bills, invoices, pay slips, notepads, notebooks, postcards, telegrams, facsimiles, telexes, films, microfilms, photographs, videotapes, slides, motion pictures, diagrams, models, drawings, recordings, tapes, transcriptions, books, publications, phone records, electronic mail, voice mail, text messages, computer files (or any other information or data compilations stored in or accessible

through computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations), and other things, whether prepared by handwriting, printing, typing, photostating, photographing, electronic recording, or any other means of recording, communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

3. "Relating to" or "relate" shall mean consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed. See sub-Exhibit "A" of Exhibit 1.

4. "And," "or," and "and/or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these document requests any information which might otherwise be construed as outside their scope.

5. The singular and plurals forms of any word shall be construed interchangeably so as to bring within the scope of these document requests any information which might otherwise be construed as outside their scope.

4. The CID is extensive and demands production of the following:

1. Documents relating to, including but not limited to documents

sufficient to show, your ownership interest in any and all corporate entities.

2.    Financial documents, covering the time period of January 1, 2014 to the present, for Nina Anand; for any corporate entities owned in whole or in part by Nina Anand; for Neil K. Anand; and for any corporate entities owned in whole or in part by Neil K. Anand, including but not limited to Advanced Medicine & Surgery; PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health, Care; EZ Pharmacy; and  Integrity Dispensing System.  The financial documents include, for example, bank account records, credit card statements, wire transfer receipts, deposit slips, ledgers, withdrawals, ATM transaction, checks, and accounts payable and receivable records.

3.    Documents relating to Nina Anand's employment or any other relationship with any of the corporate entities owned in whole or in part by Neil K. Anand, including but not limited to Advanced Medicine & Surgery; PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health, Care; EZ Pharmacy; and Integrity Dispensing System.  Such documents shall include, for example, documents reflecting Nina Anand's employment; any compensation received from that employment; any

agreements or contracts between Nina Anand, or corporate
entities owned in whole or in part by Nina Anand, and Neil K.
Anand, or any corporate entities owned in whole or in part by
Neil K. Anand; and communications regarding Neil K. Anand's
corporate entities and their businesses.

4.   Any other documents relating to Neil K. Anand's corporate
entities, including but not limited to Advanced Medicine &
Surgery; PLLC; Anand Medical Investments, LLC; Bucks County
Pain and Perioperative Medicine, PLLC; Atlantic Health, Care;
EZ Pharmacy; and Integrity Dispensing System.  Such
documents shall include, for example, communications
regarding the entities or any business conducted by or on
behalf or the entities; contracts or agreements with or by those
entities; and any documents from those entities or relating to
the activities of those entities.

5.   Documents relating to any investigation or audit of Neil K.
Anand, his corporate entities, or his employees, staff, or
contractors.  Such documents shall include, for example,
communications regarding any such investigation; documents
reflecting actions taken in response to such investigation by
you or anyone else; and documents relating to the status of any
such investigation.

5.      At no time has petitioner ever been the owner of Advanced Medicine &

Surgery, PLLC,   Anand Medical Investments, LLC, Bucks County Pain and Perioperative

Medicine, PLLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing System.  See

Exhibit "1".

6.      At no time has petitioner ever been the custodian of records of Advanced

Medicine & Surgery, PLLC,   Anand Medical Investments, LLC, Bucks County Pain and

Perioperative Medicine, PLLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing

System.  See Exhibit "1".

7.      At no time has petitioner ever been an employee of Anand Medical

Investments, LLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing System.  See

Exhibit "1".

8.      The CID served upon petitioner by the United States Department of Justice

places upon petitioner an undue burden and undue expense as petitioner has no ownership

interest, nor is the petitioner the custodian of records, in any of the corporate entities or

non-corporate entities identified in the subpoena.

9.      Petitioner, through counsel, has informed the assigned Assistant United

States Attorney of the above objections to the CID and requested that the subpoena be

withdrawn, without success.  See Exhibit "1" at sub-Exhibit B".

10.      The documents requested by the United States Department of Justice are

respectfully also protected by privilege given that the United States Department of Justice

is proceeding by subpoena under the False Claims Act for information regarding false or

fraudulent claims presented; consequently, even an innocent person may assert the Fifth

Amendment Privilege while simultaneously maintaining innocence because the privilege

protects "innocent men...who otherwise might be ensnared by ambiguous circumstances..."
Ohio v. Reiner, 532 US 17,21 (2001) (Citing Grunewald v. United States, 353 U.S. 391, 421
(1957). In this regard, the United States Department of Justice has brought an indictment
in the matter of United States of America v. Neil K. Anand, Asif Kundi, Atif Mahmood Malik
and Viktoriya Makarova under indictment number 2:19-CR-518-GEKP.  Copy of the
indictment is attached hereto as Exhibit "2".

   11. While ordinarily an individual may not assert the Fifth Amendment privilege
against self-incrimination to shield the contents of pre-existing, voluntarily created
documents, "the Act of Production Doctrine" recognizes that the Fifth Amendment protects
an individual from being compelled to produce documents in response to a subpoena
"where the act of production itself implicitly has a testimonial aspect."  United v. Hubbell,
530 U.S. 27, 35-36 (2000)(emphasis added).  Depending upon the facts of the given case,
the compelled production of documents may communicate "statements of fact" that
incriminate the person producing them, including that the documents (1) exist (2) are in
the person's possession or control and (3) are authenticated. Id.  Thus, by merely
delivering subpoenaed documents to the government, a witness may effectively be
"testifying" to factual information that could be used by the government against that
witness, either directly or through the development of investigative leads.  Id.

   12. In Fisher v. United States, 425 US 391, the Supreme Court instructed Courts
to ask 1) whether the act of production communicates the existence, control, or
authenticity of the document produced and 2) whether the incriminating factual
information communicated provides the government with evidence it might not otherwise
have.  If both elements are met, then the act of production is testimonial.

13.     In a subsequent landmark case, <u>United States v. Doe</u>, 465 US 605 (1984), the Supreme Court held that Doe validly invoked the privilege against self-incrimination in refusing to produce documents subpoenaed by a federal grand jury because his compliance "would involve testimonial self-incrimination." <u>Id</u>. at 613. The Court emphasized that the subpoenas, which were drafted in sweeping terms, demanded production of business records of sole proprietorship to which Doe conducted business. The Trial Court held that Doe's compliance with the subpoenas would infringe on his Fifth Amendment Rights because it would require him to admit that the records existed, were in his possession, and were authentic. The Court of Appeals agreed, finding no proof in the record that the government knew that the records were in Doe's possession or control prior to issuing the subpoenas. <u>Id</u>. at 163. In fact, the Court accused the government of trying to compensate for its lack of information by demanding that Doe be an informant against himself. <u>Id</u>. The Supreme Court agreed, holding that Doe's active compliance would necessarily involve testimonial self-incrimination, against which he was protected by the Fifth Amendment. <u>Id</u>.

14.     In <u>United States v. Hubbell</u>, 530 U.S. 27 (2000), the Supreme Court expounded on <u>Fisher's</u> foregoing conclusion analysis in the context of the infamous Clinton Whitewater investigation. In this matter, Hubbell was served with a subpoena demanding the production of a vast number of documents expanding a several-year time period. After Hubbell asserted the Fifth Amendment privilege and refused to comply with the subpoena, the government granted him immunity, obtained the documents, and then indicted him based upon the "contents" of the documents. The Supreme Court held that Hubbell could not be prosecuted based on the content of the documents because the government had made derivative use of the testimony implied by their production during its investigation

that led up to the criminal charges. Id. at p 43. Thus, the government was unable to demonstrate that the evidence it used to obtain the indictment was "wholly independent" of (i.e. not derivatively sourced from) Hubbell's immunized testimonial act of subpoena compliance. In dismissing the indictment, the Court stressed that the government cannot prosecute individuals based upon incriminating materials obtained through "fishing expeditions" conducted using subpoenas for the production of evidence. Id. In other words, when a subpoena is so expansively worded, the Court explained, the testimonial aspects of production can be consequential. The Court added Hubbell's assembly and production of the records was tantamount to answering a series of interrogatories asking a witness to identify and disclose the existence and locations of specific documents fitting certain broad descriptions. In order to respond to the subpoena, the Court explained, Hubbell was required to make extensive use of "the contents of his own mind" for the purpose of identifying the documents and, in doing so, was assembling pieces of the Court's case against himself. Id. This, according to the Court, clearly made his compliance with the subpoena "testimonial" within the meaning of the Fifth Amendment.

15.     In sum, the CID served upon petitioner places an undue burden and undue expense upon her since she is neither an owner nor the custodian of records of any of the entities identified in the subpoena nor is she an employee of most of the entities but was merely a helper and mere employee for two of the entities. Likewise, the CID served upon petitioner could ensnare her in a matter, where she is otherwise innocent, which is being prosecuted by the United States Department of Justice in United States of America v. Neil K. Anand, Asif Kundi, Atif Mahmood Malik and Viktoriya Makarova under indictment number 2:19-CR-518-GEKP.  See Exhibit "2".  Consequently, the demands by the United States

Department of Justice should be made upon those defendants and the owners of the entities identified in the subject CID and petitioner's motion to quash the subpoena respectfully should be granted.

WHEREFORE, Nina Anand, respectfully requests that this Honorable Court grant her motion to quash the Civil Investigative Demand subpoena issued under CID: No.: 2020-DT-341.

Respectfully submitted,
PATRICK J. GRIMES, ESQUIRE

Dated: February 28, 2020                By:_____

Patrick J. Grimes, Esquire
LAW OFFICES PATRICK J. GRIMES, LLC
1500 JFK Boulevard, Suite 1230
Philadelphia, Pennsylvania 19102
(215) 545-0004
pgrimesesq@aol.com
Attorney for Petitioner

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In The Matter of Petitioner, Nina Anand          CID No.: 2020-DT-341

## CERTIFICATION OF SERVICE

I, Patrick J. Grimes, Esquire, hereby certify that a true and correct copy of the within

motion to quash the Civil Investigative Demand subpoena was filed with the Court and was

forwarded to all interested parties on this 28th day of February, 2020 at the following:

Anthony D. Scicchitano, Esquire
United States Attorney Office
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106
anthony.scicchitano@usdoj.gov

( )Fax                ( )Regular Mail                ( )Certified Mail

( )Hand-delivery        ( )Overnight Mail        (X) Email

I hereby certify that the foregoing statements made by me are true.  I hereby certify

that if any of the foregoing statements made by me are wilfully false, I am subject to

punishment.

Dated:  February 28, 2020

Patrick J. Grimes, Esquire
Attorney for Petitioner

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In The Matter of Petitioner, Nina Anand

CID No.: 2020-DT-341

## ORDER GRANTING PETITIONER'S MOTION TO QUASH CIVIL INVESTIGATIVE DEMAND

AND NOW on this _____ day of _____, 2020, upon consideration of the petition of Nina Anand to quash the Civil Investigative Demand subpoena of the United States Department of Justice, and the Court having considered the petition, opposition papers, if any, and good cause having been shown;

IT IS on this _____ day of _____, 2020 ORDERED that the petition is GRANTED.

_____
J.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In The Matter of Petitioner, Nina Anand                    CID No.: 2020-DT-341

AFFIDAVIT OF NINA ANAND

I, Nina Anand, being duly sworn according to law, do depose and say as follows:

1.    On January 29, 2020, I was served with a civil investigative demand ("CID") subpoena by the United States Department of Justice, a copy of which is attached hereto as exhibit "A".

2.    The CID seeks production of documents and oral testimony under the False Claims Act, 31 U.S.C. § 3729-3733, to determine whether there is or has been a violation of §3729 of the False Claims Act by Neil K. Anand, with and through his corporate entities, including the Institute of Advanced Medicine & Surgery; PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health, Care; EZ Pharmacy; Integrity Dispensing System; and with and through employees including Nina Anand and whether each knowingly presented or caused to be presented, fraudulent claims for payment to Medicare and other federal healthcare programs. See exhibit "A".

3.    The CID also requests extensive documentary material from the six (6) entities referenced in paragraph number two above. See exhibit "A".

4.      At no time have I ever been the owner of Advanced Medicine & Surgery, PLLC,  Anand Medical Investments, LLC, Bucks County Pain and Perioperative Medicine, PLLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing System.

5.      At no time have I been the custodian of records for Advanced Medicine & Surgery, PLLC,   Anand Medical Investments, LLC, Bucks County Pain and Perioperative Medicine, PLLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing System.

6.      At no time have I been an employee of Anand Medical Investments, LLC, Atlantic Health Care, EZ Pharmacy or Integrity Dispensing System; however, I was a helper and mere employee of Advanced Medicine & Surgery, PLLC and Bucks County Pain and Perioperative Medicine.

7.      The CID served upon me by the United States Department of Justice would not only place upon me an undue burden and undue expense as I have no ownership interest, nor am I the custodian of records, in any of the corporate entities or non-corporate entities identified in the subpoena.

8.      My attorney, Patrick J. Grimes, Esquire, has informed the assigned Assistant United States Attorney of the above and has requested, without success,  that the subpoena be withdrawn.  A copy of the letter is attached hereto as exhibit "B".

9.      I therefore request that the Court grant my request to quash the subpoena and/or modify the subpoena.

10.     I certify that the foregoing statements made by me are true.  I am aware if any of the foregoing statements made by me are willfully false, I am subject to punishment according to law.

Dated:   2|26|2020                                    _Nina Anand_
                                                      Nina Anand

Sworn and subscribed to before me
this   26   day of February ,2020

NOTARY PUBLIC/ATTORNEY-AT-LAW
STATE OF NEW JERSEY

LINDA FISHER
Commission # 2452774
Notary Public, State of New Jersey
My Commission Expires
June 05, 2020

Exhibit   A



# UNITED STATES OF AMERICA

## U.S. Department of Justice
### Eastern District of Pennsylvania
### CIVIL INVESTIGATIVE DEMAND
Documents and Oral Testimony

To:  Nina Anand
23 Oakmont Circle
Glen Mills, PA 19342

CID No.:
**2020-DT-341**

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation generally concerns whether Neil K. Anand, with and through his corporate entities, including the Institute of Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System; and with and through employees, including Nina Anand, knowingly presented or caused to be presented false or fraudulent claims for payment to Medicare and other federal healthcare programs through their drug dispensing program and other healthcare services, and tracing the funds obtained through any such scheme. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

**YOU ARE COMMANDED** to produce the documents set forth in the documentary material request within 30 days of service of this Civil Investigative Demand, and appear for oral testimony within 30 days after notification by the False Claims Act investigator.

**Date of Production:**
Within 30 days of Service of this Demand

**Place of Production:**
Office of the United States Attorney
Attn: AUSA Anthony D. Scicchitano
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

**Special Instructions:** The documentary material may be mailed to Assistant U.S. Attorney Anthony D. Scicchitano, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106. If you have any questions, you may contact AUSA Scicchitano at (215) 861-8380, or Anthony.Scicchitano@usdoj.gov.

IN TESTIMONY WHEREOF

The undersigned official of the U.S. DEPARTMENT OF JUSTICE, has hereunto set his hand.

(SIGNATURE)
Issued under the authority of 31 U.S.C. § 3733

| Failure to comply with the requirements of this subpoena will render you liable to proceedings in U.S. district court to enforce the subpoena and to punish default or disobedience. | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY <br>**Anthony D. Scicchitano** <br>**Assistant United States Attorney** <br>**615 Chestnut Street, Suite 1250** <br>**Philadelphia, PA 19106** <br>**(215) 861-8380, Anthony.Scicchitano@usdoj.gov** |

**PROOF OF SERVI**

CID NO.

**2020-DT-341**

| SERVED (DATE) | PLACE OF SERVICE |
|---|---|
| January 29, 2020 | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE (P) |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Beth A. Fuhrhop | Legal Assistant |

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Nina Anand
23 Oakmont Circle
Glen Mills, PA 19342**

9590 9403 0890 5223 7050 24

2. Article Number (Transfer from service label)

7013 2250 0000 5970 7295

PS Form 3811, July 2015 PSN 7530-02-000-9053

## DECLARATION OF SERVER

I, an employee of the United States working under the direction and supervision of the Assistant United States Attorney identified on the face of this document in connection with a False Claims Act investigation, certify that I served an executed copy of the civil investigative demand listed above.  I declare under penalty of perjury under the laws of the United States of America that the forgoing information contained in this Proof of Service is true and correct.

Executed on    January 29, 2020
                          DATE

*Beth ann Fuhrhop*
                          SIGNATURE OF SERVER

United States Attorney's Office for the Eastern District of Pennsylvania
                          ADDRESS OF SERVER

615 Chestnut Street, Suite 1250

Philadelphia, PA   19106

CID No. 2020-DT-341 __
**Oral Testimony Request**

You are required by this Demand to give oral testimony under oath, commencing thirty days after notification by the False Claims Act investigator.   Testimony will commence at 10:00 a.m. at the United States Attorney's Office for the Eastern District of Pennsylvania or at such time and in such other place as may be agreed upon by AUSA Anthony D. Scicchitano and you.

AUSA Scicchitano will be the False Claims Act investigator who will conduct the examination. The custodian to whom the transcript of the deposition will be delivered is AUSA Scicchitano.

Your attendance and testimony at the oral examination are necessary to the False Claims Act investigation described above. You have the right to be accompanied by an attorney and any other personal representative at the oral examination.

The general purpose for which this Civil Investigative Demand is issued is to discover your knowledge and any relevant documents concerning whether Neil K. Anand, with and through his corporate entities, including the Institute of Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System; and with and through employees, including Nina Anand, knowingly presented or caused to be presented false or fraudulent claims for payment to Medicare and other federal healthcare programs through their drug dispensing program and other healthcare services, and tracing the funds obtained through any such scheme.

CID No. 2020-DT-341
**Instructions for Documentary Material Requests**

1. These requests apply to all documentary material in your possession, custody, or control regardless of their location and regardless of whether such documents are held by your attorneys, consultants, accountants, investigators, representatives or agents, or any other person acting on your behalf.

2. These requests are continuing in nature. If you become aware of or acquire possession, custody, or control of additional responsive documents, you shall promptly produce such additional documents for inspection and copying.

3. If any documents are withheld based upon a claim of privilege, work product doctrine, or any other protection from discovery:

   a. identify the document in writing;

   b. state the privilege(s), work product doctrine(s), or other protection(s) from discovery relied upon for withholding the document; and

   c. state all facts supporting the claim of privilege(s), work product doctrine(s), or other protection(s) from discovery.

4. Identify all responsive documents that have been lost, discarded, or destroyed. In so doing, state the type of document, its date, the approximate date it was lost, discarded, or destroyed, and the identity of each person having knowledge of the contents thereof.

5. The False Claims Act investigation generally concerns whether Neil K. Anand, with and through his corporate entities, including the Institute of Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System; and with and through employees, including Nina Anand, knowingly presented or caused to be presented false or fraudulent claims for payment to Medicare and other federal healthcare programs through their drug dispensing program and other healthcare services, and tracing the funds obtained through any such schemes.

CID No. 2020-DT-341

## Definitions for Documentary Material Requests

1.  "You" or "your" shall mean **Nina Anand**, and any person acting on her behalf, including but not limited to employees, contractors, attorneys, consultants, accountants, investigators, representatives, or agents.

2.  "Documentary material," "document," or "documents" shall mean all writings, recordings, papers, tangible things, or electronically produced or stored matters of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of all records, paper, communication, tabulation, chart, diaries, appointment books, calendars, schedules, journals, notes, memoranda, reports, minutes, notices, charts, graphs, tables, bulletins, financial statements, balance sheets, asset lists, ledgers, letters, correspondence of any kind, contracts, agreements, negotiable instruments, time records, bills, invoices, pay slips, notepads, notebooks, postcards, telegrams, facsimiles, telexes, films, microfilms, photographs, videotapes, slides, motion pictures, diagrams, models, drawings, recordings, tapes, transcriptions, books, publications, phone records, electronic mail, voice mail, text messages, computer files (or any other information or data compilations stored in or accessible through computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations), and other things, whether prepared by handwriting, printing, typing, photostating, photographing, electronic recording, or any other means of recording, communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

3.  "Relating to" or "relate" shall mean consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

4.  "And," "or," and "and/or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these document requests any information which might otherwise be construed as outside their scope.

5.  The singular and plurals forms of any word shall be construed interchangeably so as to bring within the scope of these document requests any information which might otherwise be construed as outside their scope.

## CID No. 2020-DT-341
## Documentary Material Requests

You are required by this Demand to produce all documents in your possession, custody, or control relating to the following:

1.    Documents relating to, including but not limited to documents sufficient to show, your ownership interest in any and all corporate entities.

2.    Financial documents, covering the time period of January 1, 2014 to the present, for Nina Anand; for any corporate entities owned in whole or in part by Nina Anand; for Neil K. Anand; and for any corporate entities owned in whole or in part by Neil K. Anand, including but not limited to Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System. The financial documents include, for example, bank account records, credit card statements, wire transfer receipts, deposit slips, ledgers, withdrawals, ATM transactions, checks, and accounts payable and receivable records.

3.    Documents relating to Nina Anand's employment or any other relationship with any of the corporate entities owned in whole or in part by Neil K. Anand, including but not limited to Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System. Such documents shall include, for example, documents reflecting Nina Anand's employment; any compensation received from that employment; any agreements or contracts between Nina Anand, or corporate entities owned in whole or in part by Nina Anand, and Neil K. Anand, or any corporate entities owned in whole or in part by Neil K. Anand; and communications regarding Neil K. Anand's corporate entities and their businesses.

4.    Any other documents relating to Neil K. Anand's corporate entities, including but not limited to Advanced Medicine & Surgery, PLLC; Anand Medical Investments, LLC; Bucks County Pain and Perioperative Medicine, PLLC; Atlantic Health Care; EZ Pharmacy; and Integrity Dispensing System. Such documents shall include, for example, communications regarding the entities or any business conducted by or on behalf of the entities; contracts or agreements with or by those entities; and any documents from those entities or relating to the activities of those entities.

5.    Documents relating to any investigation or audit of Neil K. Anand, his corporate entities, or his employees, staff, or contractors. Such documents shall include, for example, communications regarding any such investigation; documents reflecting actions taken in response to such investigations by you or anyone else; and documents relating to the status of any such investigation.

You must make this material available to Assistant United States Attorney Anthony D. Scicchitano, who has been designated as a False Claims Act custodian. The documents described above may be produced in an electronic useable format.

These documents shall be produced within 30 days of service of this Demand at 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106, or by email to Anthony. Scicchitano@usdoj.gov, or through alternative transmission or at another location to be mutually agreed upon by yourself and a False Claims Act custodian. The production of documentary material in response to this Demand must be made under a declaration of compliance in the form printed in this Demand.

CID No. 2020-DT-341
**Declaration of Compliance**
(Documentary Material)

I have responsibility for producing the documentary material required by Civil Investigative Demand No. **2020-DT-341**___. I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of the person to whom the Demand is directed has been produced and made available to the false claims law investigator or custodian identified in the Demand.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on _____

Date

_____

Signature

_____

Title

Exhibit B

**LAW OFFICES**
**PATRICK J. GRIMES, L.L.C.**
A New Jersey Limited Liability Company
ATTORNEY AT LAW

PATRICK J. GRIMES
---

ADMITTED TO PRACTICE
IN NEW JERSEY AND
PENNSYLVANIA

*Attorney Direct Cell:*
*856-906-9601*

PGrimesEsq@AOL.com

1230 BRACE ROAD
CHERRY HILL, NJ 08034-3211
(856)428-2299
FAX (856)428-4593
----

SUITE 1230
1500 JFK BOULEVARD
PHILADELPHIA, PA 19102
(215)545-0011

www.grimesfirm.com

February 12, 2020

Anthony D. Scicchitano, Esquire
United States Attorney Office
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106

RE:   Nina Anand
      CID: No.: 2020-DT341

Dear Mr. Scicchitano:

This serves as a follow-up to my unsuccessful attempt to reach you by telephone today. This letter acknowledges receipt of the civil subpoena served upon my client. Kindly be advised that my client objects to this subpoena on several grounds.

At the outset, my client has no ownership interest in any of the corporate entities and/or non-corporate entities identified in the subpoena and therefore the records you request should be directed to the owners of the entities.

Secondly, this request is likely protected by privilege given that you are proceeding under the subpoena through the False Claims Act for information regarding false or fraudulent claims presented. In this regard, even an innocent person may assert the Fifth Amendment privilege while simultaneously maintaining innocence. This is true because the privilege protects "innocent men... who otherwise might be ensnared by ambiguous circumstances..." Ohio v. Reiner, 532 US. 17, 21 (2001) (Citing Grunewald v. United States, 353 U.S. 391, 421 (1957).

Finally, the subpoena subjects my client, a mere employee, to undue burden and expense. In lieu of litigating motion to squash, kindly contact me to discuss an amicable resolution to this matter.

Thanking you for your courtesies and cooperation in this matter, I am

Very truly yours,

PATRICK J. GRIMES

PJG/laf
cc:      Nina Anand

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19- |
| | : | |
| v. | : | DATE FILED: |
| | : | |
| NEIL K. ANAND | : | VIOLATIONS: |
| ASIF KUNDI | : | 18 U.S.C. § 1347 (health care fraud – 1 |
| ATIF MAHMOOD MALIK | : | count) |
| VIKTORIYA MAKAROVA | : | 21 U.S.C. § 846 (conspiracy to distribute |
| | : | controlled substances –1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

### (Health Care Fraud)

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1.    The defendant NEIL K. ANAND was a medical doctor who held himself out as a provider for pain management and addiction medicine.  Defendant ANAND was licensed to practice medicine in the Commonwealth of Pennsylvania.  Defendant ANAND was registered with the Drug Enforcement Administration ("DEA") for the purpose of prescribing controlled substances.

2.    Defendant NEIL K. ANAND operated a medical practice that focused on pain management at three locations: 5000 Frankford Avenue, Suite 2, Philadelphia, PA; 5735 Ridge Avenue, Suite 101, Philadelphia, PA; and 3554 Hulmeville Road, Suite 101, Bensalem, Pennsylvania (collectively referred to as the "PRACTICE").  Defendant ANAND also owned several non-pharmacy dispensing sites which provided in-office dispensing of medications to patients at the PRACTICE, including Anand Medical Investment ("AMI"), Institute of Advanced

Medicine and Surgery ("IAMS"), and Bucks County Pain and Perioperative PLLC doing

business as Bucks County Spine and Pain Medicine ("BCSPM") (collectively referred to as the

"DISPENSARIES").

3.      Defendant NEIL K. ANAND and the DISPENSARIES participated in

numerous federal and private insurance health care plans, including the Medicare Program,

federal health care plans paid for by the Office of Personnel Management and the Department of

Labor Office of Workers' Compensation Program, and private plans administered by

Independence Blue Cross.

4.      Defendant ASIF KUNDI was a foreign trained physician who was not

licensed to practice medicine in the United States. Defendant KUNDI worked for defendant

NEIL K. ANAND at the PRACTICE from 2017 through June 2019 and managed the

DISPENSARIES.

5.      Defendant ATIF MAHMOOD MALIK was a foreign trained physician

who was not licensed to practice medicine in the United States. Defendant MALIK worked for

defendant NEIL K. ANAND at the PRACTICE from 2017 through June 2019.

6.      Defendant VIKTORIYA MAKAROVA was a licensed nurse practitioner

who worked for defendant NEIL K. ANAND at the PRACTICE from June 2018 through January

2019.

### The Medicare Program

7.      The Medicare Program ("Medicare") was a federally-funded health care

program that provided benefits to persons who are at least 65 years old or disabled.  Medicare

was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency

under the United States Department of Health and Human Services ("HHS").  Individuals who

received benefits under Medicare were referred to as Medicare "beneficiaries."  Medicare was

2

divided into multiple parts:  Part A covered hospital inpatient care, Part B covered physicians'

services and outpatient care, Part C was Medicare Advantage Plans, and Part D covered

prescription drugs.

        8.     Medicare was a "Federal health care program" as defined in Title 42,

United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title

18, United States Code, Section 24(b).

        9.     A medical provider was required to enroll with Medicare in order to

submit claims for payment to CMS.  To enroll in Medicare, a medical provider was required to

enter into an agreement with CMS in which the provider agreed to comply with all applicable

statutory, regulatory, and program requirements for reimbursement from Medicare.  By signing

the Medicare enrollment application, the provider certified that the provider understood that

payment of a claim was conditioned on the claim and the underlying transaction complying with

Medicare regulations, Medicare Program instructions, the law, and on the provider's compliance

with all applicable conditions of participation in Medicare.

        10.    Medicare covered prescriptions that were obtained from a state-licensed

physician, or other appropriately licensed health care provider, who was registered as required

with the DEA.  Medicare required that any drug prescribed by a participating provider must be

safe and effective and otherwise reasonable and necessary and would only reimburse for claims

for prescriptions that were prescribed within the course of professional practice and for a

legitimate medical purpose.  Generally, a pharmacy submitted the claim to Medicare for the

prescription medication using the information contained in the prescription, such as prescriber's

name, patient information, drug, strength, and quantity dispensed.  Medicare relied on the

accuracy of the information in a claim when making payments and presumed that the underlying

prescription was written within the usual course of professional practice and for a legitimate medical purpose. Medicare did not reimburse for medically unnecessary medications.

### Other Insurance Programs

11.    The Office of Personnel Management ("OPM") served as the chief human resources agency and personnel policy manager for the federal government. Among its many duties, OPM managed the Federal Employees Health Benefits Program ("FEHBP"). FEHBP benefits were afforded to all federal employees and their family members who chose from over 300 FEHBP contracted health insurance carriers. Benefits were administered by private insurance companies and paid for, in large part, by OPM. A medical provider must have been enrolled with OPM as a participating provider in order to submit claims to OPM for medical services to federal employees and their family members.

12.    The United States Department of Labor Office of Workers' Compensation Program ("OWCP") administered the federal workers' compensation program which provided certain benefits, including health care benefits and wage loss replacement, to federal employees who sustained work-related injuries. *See* 5 U.S.C. §§ 8101, *et seq.* Providers were required to enroll with OWCP through its designated bill processing agent and to submit claims for payment under their issued provider number.

13.    Independence Blue Cross ("IBC") was a private insurance company that offered health insurance plans for individuals and families throughout southeastern Pennsylvania. IBC was the largest health insurer in the Philadelphia area and offered a wide variety of health plans, including managed care and traditional indemnity insurance. A medical provider must have been enrolled with IBC as a participating provider in order to submit claims to IBC for medical services.

14.     Like Medicare, OPM, OWCP, and IBC required that any drug prescribed by a participating provider must be safe and effective and otherwise reasonable and necessary and only reimbursed for claims for prescriptions for controlled substances that were prescribed within the course of professional practice and for a legitimate medical purpose by a state-licensed physician or other appropriately licensed health care provider.

15.     A copayment or copay was a is a fixed amount paid by a patient for receiving a particular health care service, with the remaining balance covered by the person's insurance company.  Medicare, OPM, OWCP, and IBC used copayments to deter people from seeking medical care that may not be necessary.  Medicare, OPM, OWCP, and IBC prohibited the routine waiver of copayments.

### The Fraudulent Scheme

16.     From in or about November 2015 to in or about July 2019, the defendants NEIL K. ANAND, ASIF KUNDI, ATIF MAHMOOD MALIK, and VIKTORIYA MAKAROVA, together with others, executed a scheme to defraud health care benefit programs, as follows:

a.     The defendants provided patients with bags of medications, referred to as "Goody Bags," which contained numerous prescription medications that were dispensed by the DISPENSARIES based on what a particular patient's insurance covered, not the patient's medical need.

b.     The Goody Bags contained a variety of medically unnecessary medications, including analgesics, sedatives, muscle relaxants, and anti-inflammatory drugs.

c.     The defendants provided the Goody Bags to patients without dosing and usage directions.

5

      d.     The defendants did not collect copayments from the patients for the medications in the Goody Bags but required patients to falsely sign that they paid a copay.

      e.     The defendants required that patients accept the Goody Bags, which were medically unnecessary and not eligible for reimbursement, in order to receive prescriptions for pain medications, to include Schedule II controlled substances.

      f.     The defendants submitted, or caused to be submitted, fraudulent claims to health care benefit programs for medically unnecessary prescription medications that were dispensed by the DISPENSARIES.

17.     From in or about November 2015 to in or about July 2019, defendant NEIL K. ANAND, through the DISPENSARIES, billed Medicare, OPM, and IBC for the Goody Bags and was paid over $4 million.

18.     From in or about November 2015 to in or about July 2019, in the Eastern District of Pennsylvania, the defendants

**NEIL K. ANAND,**
**ASIF KUNDI,**
**ATIF MAHMOOD MALIK, and**
**VIKTORIYA MAKAROVA,**

together with others, knowingly and willfully executed and attempted to execute, and aided and abetted, a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, OPM health plans, and IBC, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, OPM, and IBC, in connection with the delivery of and payment for health care benefits, items and services.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT TWO

### (Conspiracy to Distribute Controlled Substances)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this Indictment:

1.      Paragraphs One through Six of Count One are incorporated here.

*The Controlled Substances Act*

2.      The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensation of controlled substances in the United States.   With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

3.      Medical practitioners, such as physicians, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine, were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States.   21 U.S.C. § 822(b); 21 C.F.R. § 1306.03.   A medical practitioner must have been registered with the DEA in order to prescribe controlled substances.   Upon application by the practitioner, the DEA assigned a unique registration number to each qualifying medical practitioner.

4.      Chapter 21 of the Code of Federal Regulations, Section 1306.04, which governed the issuance of prescriptions, provided that a prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.

5.      The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for

7

abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

6.     A controlled substance assigned to Schedule II had a high potential for abuse, was highly addictive, and had a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.  Abuse of a Schedule II controlled substance could have led to severe psychological and/or physical dependence. Pursuant to the CSA and its implementing regulations, Oxycodone was classified as a Schedule II controlled substance.  Oxycodone was sold generically and under a variety of brand names, including OxyContin, Roxicodone, Endocet, and Percocet.  Oxycodone, an opioid pain medication, was about fifty percent stronger than Morphine. Oxycodone was among the Schedule II opioid controlled substances that had the highest potential for abuse and associated risk of fatal overdose.

7.     From in or about November 2015 to in or about July 2019, the defendants NEIL K. ANAND, ASIF KUNDI, ATIF MAHMOOD MALIK, and VIKTORIYA MAKAROVA, together with others, prescribed Schedule II controlled substances, including Oxycodone, outside the usual course of professional practice and without a legitimate medical purpose.  Specifically,

a.     Defendant ANAND left pre-signed blank prescription pads at the PRACTICE for defendants KUNDI and MALIK to use to prescribe Schedule-II controlled substances to patients;

b.     Defendant VIKTORIYA MAKAROVA gave blank pre-signed prescriptions to defendants MALIK and KUNDI to use to prescribe Schedule II controlled substances to patients; and

c.     Defendants KUNDI and MALIK, who were not licensed to practice medicine in the United States and were not registered with the DEA, prescribed Schedule II controlled substances to patients.

8.       From in or about November 2015 to in or about July 2019, in the Eastern

District of Pennsylvania, the defendants

**NEIL K. ANAND,
ASIF KUNDI,
ATIF MAHMOOD MALIK, and
VIKTORIYA MAKAROVA,**

conspired with each other and with others known and unknown to the Grand Jury, to knowingly

and intentionally distribute and dispense, without a legitimate medical purpose and outside the

usual course of professional practice, a mixture and substance containing a detectable amount of

oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code,

Section 841(a)(1), (b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

## NOTICE OF FORFEITURE #1

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 18, United States Code, Section 1347, set forth in this indictment, the defendants

**NEIL K. ANAND,**
**ASIF KUNDI,**
**ATIF MAHMOOD MALIK, and**
**VIKTORIYA MAKAROVA**

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense.

       2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

       All pursuant to Title 18, United States Code, Section 982(a)(7).

10

## NOTICE OF FORFEITURE #2

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    As a result of the violations of Title 21, United States Code, Section 841, set forth in this indictment, the defendants

**NEIL K. ANAND,**
**ASIF KUNDI,**
**ATIF MAHMOOD MALIK, and**
**VIKTORIYA MAKAROVA**

shall forfeit to the United States of America:

    (a)    any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations; and

    (b)    any property constituting, or derived from, proceeds obtained, directly or indirectly, from the commission of such violations.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.


_____

GRAND JURY FOREPERSON


WILLIAM M. MCSWAIN
United States Attorney
Eastern District of Pennsylvania

ROBERT ZINK
Chief
Criminal Division, Fraud Section